UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GANG CHEN,<br><br>Defendant. | No. 1:21-cr-10018-PBS |

### GOVERNMENT'S OPPOSITION TO DEFENDANT GANG CHEN'S MOTION FOR SANCTIONS

The Defendant's Motion for Sanctions (the "Motion") is without merit and should be denied. The U.S. Attorney's statements during the January 14, 2021 press conference (the "Press Conference") permissibly and accurately summarized or simply repeated allegations contained in the publicly-filed criminal complaint. The press release announcing the defendant's arrest (the "Press Release") did the same. Neither violated Local Rule 83.2.1 or Massachusetts Rule of Professional Conduct 4.1. Furthermore, the allegations in the complaint are truthful and accurate, not false or misleading. In the end, the Defendant's Motion is little more than an attempt to publicly comment on evidence in the case, criticize the prosecution, and score points in the court of public opinion. As a motion for sanctions, it fails and should be denied summarily.

### FACTUAL BACKGROUND

A. The Criminal Complaint

On January 14, 2021, the Defendant, Gang Chen ("Chen") was arrested and charged by criminal complaint with wire fraud, failing to file a report of foreign bank and financial account

("FBAR") with the IRS, and making a false statement on his 2018 federal income tax return.[1] The allegations in the Criminal Complaint accurately demonstrate that Chen concealed material information — his extensive work as an expert and strategic advisor for the government of the People's Republic of China ("PRC") — from the U.S. Department of Energy ("DOE") and caused the filing of a false tax return that concealed a Chinese bank account from the Internal Revenue Service ("IRS"). Indeed, the complaint alleges that Chen concealed the following appointments from, and activities for, the PRC government:

- Advisor for the China Scholarship Council ("CSC") (since 2013);

- 4th Overseas Expert Consultant to the PRC Government at the request of the PRC Consulate General in New York (since 2014) – "responsibilities … included giving 'advice and consultation on China's scientific and economic development;'"

- Review expert for the PRC's Ministry of Science and Technology, National Natural Science Foundation of China ("NNSFC") (since 2015);

- Overseas Chief Strategic Scientist to Zhongguancun Development Group ("ZDG"), a PRC state-owned enterprise funded by the Beijing Municipal Government (since 2017);

- Consultant and Advisor to the Outstanding Talent Plan at the Chongqing No. 2 Foreign Language School in the PRC for which he "was to be paid $355,715" over a period of five years (since 2017);

- Wuhan City Partner Outstanding Talent award recipient (2018); and

- 3551 Optics Valley Talent Plan award recipient (2018).

Complaint at ¶¶ 20-23. As the Complaint alleges, these appointments and the volume of work Chen did for the PRC government are evidence that "Chen has sought to advance the scientific

---

[1] The defense quibbles with the fact that the government elected to charge Chen by Complaint in the first instance. The argument makes little sense, of course, as all the information in the Complaint could have been included in an indictment.

and technological development of the PRC by providing advice and expertise — sometimes directly to PRC government officials — often in exchange for financial compensation and awards." *Id.* at ¶ 10.

The allegations in the Complaint also set out extensive evidence of Chen's motive to commit the crimes with which he is charged, that is, Chen's apparent desire to assist the PRC in matters of science and technology. These allegations include most of an email written by Chen to himself. *Id.* at ¶ 19. The email sets out Chen's own thoughts, or his notes of a meeting with a high ranking PRC government official, or both, and it is evidence of Chen's desire to assist the PRC in matters of science and technology – in other words, a motive to commit the crimes charged in the Complaint. *Id.*

The Complaint also alleges that Chen did not conceal his activities from just the government. *See* Complaint at ¶ 31. The defendant also failed to disclose PRC appointments and awards to his employer, MIT, in violation of MIT's own internal reporting requirements.[2] *Id.*

B.  The Press Release and the Press Conference

Several hours after the Defendant's arrest on January 14, the U.S. Attorney's Office issued a press release announcing the charges. Contemporaneously, the U.S. Attorney held a press conference during which he described the charges against Chen, as stated in the Complaint, and answered questions from members of the media. The Defendant now claims that both the Press

---

[2]As the Complaint alleges, MIT's Outside Professional Activities policy required the defendant to disclose "all compensated outside professional activities and all uncompensated outside professional activities i.e. requiring substantial time commitment with no, or nominal compensation." Complaint at ¶ 31. MIT's Financial Conflict of Interest Policy for researchers required the defendant to disclose renumeration "in excess of $5,000 (whether received or expected) from any for-profit or not-for profit organizations, or from foreign educational institutions, foreign teaching hospitals or foreign research institutions affiliated with educational institutions." *Id.*

Release and the Press Conference violated Local Rule 83.2.1 and Massachusetts Rule of Professional Conduct 4.1.  Local Rule 83.2.1 reads, in relevant part:

> **(a) Generally**. No lawyer shall release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication in connection with pending or imminent criminal litigation with which the lawyer is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.
>
> …
>
> **(c) Pending Matters**. From the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the commencement of trial or disposition without trial, a lawyer associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement, which a reasonable person would expect to be disseminated by means of public communication, relating to the matter and concerning… the character or reputation of the accused… [or] [a]ny opinion as to the accused's guilt or innocence as to the merits of the case or the evidence in the case.

Massachusetts Rule of Professional Conduct ("Mass. R. Prof. C.") 4.1 reads, in relevant part:

> In the course of representing a client a lawyer shall not knowingly… make a false statement of material fact or law to a third person.

Neither the Press Release nor the Press Conference violated either rule.  Rather, both accurately characterized, or quoted verbatim, the allegations against the defendant in the Complaint.

C. <u>The Indictment</u>

Chen was subsequently charged by Indictment.  The charges in the Indictment are based on Chen's lies and failures to disclose material information to DOE and the IRS.  Counts One and Two of the Indictment allege that Chen failed to disclose significant professional activities and awards, all involving the PRC and the PRC government, to DOE in both a 2017 grant proposal

and a 2019 post-award progress report, as the law requires him to do.  Indictment at ¶¶ 17-18. Counts Three and Four of the Indictment charge the Defendant with failing to disclose to the IRS his interest in a financial account at the Bank of China, and his related failure to truthfully state in his 2018 federal income tax return that he owned or had an interest in a foreign bank account during that year.  *Id.* at ¶¶ 19-22.

## ARGUMENT

I. <u>The Press Conference Did Not Violate Local Rule 83.2.1 or Massachusetts Rule of Professional Conduct 4.1</u>.

The Defendant contends that three specific quotations from the Press Conference violated either Local Rule 83.2.1 or Mass. R. Prof. C. 4.1.  These claims are meritless.

   a. *The Defendant's Loyalty to China.*

First, the Defendant contends that the U.S. Attorney violated Local Rule 83.2.1 by saying that "[t]he allegations of the complaint imply that this was not just about greed, but about loyalty to China." Def. Mot. at 3.  The Defendant claims that this comment improperly spoke to the his "character and reputation*,"* arguing that he has "not been charged with any of the numerous crimes in the United States Code that suggest loyalty to a foreign country." *Id*.  But the U.S. Attorney's statement goes to the defendant's motive and intent, not his character or reputation, and is amply supported by the allegations in the Complaint showing Chen's desire to promote the PRC's scientific and economic development.  As noted by the First Circuit Court of Appeals:

> Where, as here, the disputed evidence is offered to show motive, the relevancy hurdle is at its nadir.  Motive is, by definition, subjective in nature; it is a state of mind that is shown by proving the emotion that brings it into being. Thus, as to such testimony, … a circumstance showing the probability of appropriate ensuing action ... is always relevant....

*United States v. Tierney*, 760 F.2d 382, 387 (1st Cir. 1987) (internal quotations and citations omitted).  Here, based on the evidence detailed in the complaint, the government believes that the Defendant's loyalty to China and his efforts to aid their scientific development help explain his desire to conceal the nature and breadth of his PRC appointments and awards from DOE.[3]  The U.S. Attorney's comment about Chen's alleged loyalty to China was a statement regarding Chen's motive to commit the crimes set forth in the complaint and was based entirely on the detailed allegations in the Complaint.  It could not, and did not, violate Local Rule 83.2.1 or Mass. R. Prof. C. 4.1.

      b.    *Federal Grant Disclosure Requirements*

Next, the Defendant claims the U.S. Attorney violated Local Rule 83.2.1 by saying "[t]o be clear, federal grant applications require the disclosure of information concerning sponsored foreign activities and awards." Def. Mot. at 3.  The defendant argues this is a prohibited extrajudicial statement going "to the 'merits of the case.'"  *Id.*  But it is a plain fact that the federal grant proposal in question did require the disclosure of Chen's professional and research activities and information concerning sponsored foreign activities and awards, as set out in the Complaint. Complaint at ¶ 29.  These requirements are not imagined or exaggerated: they come directly from the DOE funding announcement in response to which Chen submitted his fraudulent proposal.  *Id.*  Since the U.S. Attorney's statement was an accurate, almost verbatim, description of these requirements, as detailed in the complaint, it was not an "extrajudicial statement . . . concerning [a]ny opinion as to the accused's guilt or innocence as to the merits of the case…." Local Rule 83.2.1.

---

[3] The government also expects the evidence will show that the defendant was compensated for many of his activities in China.  *See, e.g.,* Complaint at ¶¶ 10, 20, 23.

6

      c.    *The Grant Funding*

Finally, the Defendant claims that the U.S. Attorney violated Local Rule 83.2.1 and Mass. R. Prof. C. 4.1 by saying that "[s]ince 2013, Chen has received about $19 million in U.S. federal grants, but he has also received about $29 million in foreign funding, including substantial money from a public research university in China that is funded by the Chinese government." Def. Mot. at 4. Again, Chen's claim has no merit. The U.S. Attorney's statement came directly from the complaint and thus is not an extrajudicial statement about the merits of the case. The Complaint itself alleges that "Chen's research has been funded" by federal grants and millions of dollars in foreign funding, *see* Complaint at ¶ 15, making clear that the funding benefited Chen because it furthered his own research interests.

II.    <u>The Press Release Did Not Violate Local Rule 83.2.1 or Massachusetts Rule of Professional Conduct 4.1.</u>

Finally, the Defendant contends that the U.S. Attorney violated Local Rule 83.2.1 and Mass. R. Prof. C. 4.1. by including, in the Press Release, a portion of an email dated February 26, 2016 (the "February 2016 Email") that Chen wrote to himself. The relevant portion of the Press Release stated as follows:

> It is further alleged that Chen's efforts to promote the PRC's scientific and economic development were partially detailed in a February 2016 email that Chen sent himself using his MIT e-mail account. The email read:
>
> 1. promote chinese collaboration
>
> 2. China places innovation (scientific) as key and core not fashion [sic], but because
>
> we must do it, from historic trend as well from our stage
>
> 3. our economy is no. 2, but from technology (structure of economy) and human
>
> resources, we are far from no. 2

7

> 4. we are paying big price in environment, not sustainable, as well as from labor cost
>
> 5. environment protection and development in same place, environment even higher, clean energy if higher cost, reduce steel, cement. We must count on technology, cannot grow as past
>
> 6. communist 18th convention, scientific innovation placed at core. We realize not just independent innovation; but also internationalize to plan for and facilitate. Closed door innovation does not work; innovation as driving force[4]

As a threshold matter, this portion of the Press Release was a direct quote from the publicly-filed complaint. *See* Complaint at ¶ 19. It cannot, therefore, form the basis of a violation of Local Rule 83.2.1, which prohibits the release of "extrajudicial" statements. For the same reason, it also cannot form the basis of a violation of Mass. R. Prof. C. 4.1.

Regardless, the Defendant claims that inclusion of the February 2016 Email (both in the Complaint and the Press Release) was misleading because (1) it does not reflect Chen's "efforts" to help the PRC since it contained "notes from a lecture he attended rather than his own thoughts;" and (2) the government failed to include the last sentence of the email in the Complaint. Def. Mot. at 6-7. Both claims are baseless.

*First,* the email need not be only "his own thoughts" to show that Chen was interested in "promot[ing] the PRC's scientific and economic development." *Id*. Indeed, neither the Press Release nor the Complaint states that the February 2016 email contained the Defendant's own, original thoughts. Whether the email contained Chen's notes of a meeting, his own thoughts, or a combination of the two, the plain words of the email help demonstrate — as do the plethora of other allegations in the complaint — that Chen was interested in "promot[ing] the PRC's scientific

---

[4] A copy of the entire February 2016 email is attached hereto as Exhibit A. The only redaction is the name of the MIT administrator on the last line of text above Chen's signature line.

and economic development," *id.*, a fact that goes to his motive for committing the offenses with which he is charged.

The Defendant claims that the February 26 email was "notes from a lecture he attended." Def. Mot. at 6.  It is worth pointing out that on February 26, 2016, Chen attended two invite-only meetings with Zhigang Wang,[5] the then "Deputy Director" of China's Ministry of Science and Technology and a "Party Secretary" of the Chinese Communist Party, and other senior PRC Government officials.  One meeting was held at MIT while the other occurred later, in the evening, at a hotel in Boston.  Neither of these was a "public speech," nor could fairly be described as a "lecture."  *Id*.  Indeed, at the later meeting, which focused on the PRC's 13th Five-Year Science and Technology Development Plan, Chen was asked to make a presentation to Wang and other members of a senior PRC government delegation.

*Second,* the last sentence of the email — the one Defendant claims was omitted because it would "completely defeat the entire point of referencing the email" — in fact adds nothing new to the Complaint.  The additional line references a senior MIT administrator and the possibility of a collaboration with MIT.  But the portion of the email quoted in the complaint already expressly includes references to a collaboration between MIT and the PRC.  *Id*.  ("How to promote MIT China collaboration . . . we should work together, we do share common grants for many things").

In sum, neither the Press Release nor the Government's recitation of a portion of the February 2016 email in the Complaint establish a violation of any rule nor provide any basis for sanctions.

---

[5]Wang's name appears in the subject line of the February 2016 email (Attachment A).  Accordingly, when the defense states in his motion that this email contains notes of "a public speech by a Chinese Government Official" (Def. Mot. at 6), the Government presumes he is referring to Deputy Director Wang.

## CONCLUSION

For the reasons stated above, the government respectfully asks the Court to deny the Defendant's motion for sanctions.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:  /s/ *B. Stephanie Siegmann*
B. Stephanie Siegmann
Jason A. Casey
Timothy H. Kistner
Assistant U.S. Attorneys

Dated: February 11, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on February 11, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ *B. Stephanie Siegmann*
B. Stephanie Siegmann