UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GANG CHEN | No. 1:21-cr-10018-PBS |

**DEFENDANT GANG CHEN'S REPLY IN SUPPORT OF
MOTION FOR SANCTIONS**

The government's Opposition to Professor Chen's Motion for Sanctions (the "Response") feebly attempts to explain its deliberate violation of the Local Rules but serves only to underscore the need for this Court to impose sanctions.

**ARGUMENT**

A. The government's claim that a Defendant's disloyalty to the United States does not concern his "character or reputation" makes no sense.

At the January 14 Press Conference, United States Attorney Lelling falsely said that "[t]he allegations of the complaint imply that this was not just about greed, but about loyalty to China."[1] The government now contends this statement was not about Professor Chen's "character or reputation," but rather about his "motive and intent." Response at 5-6. In support, the government notes that statements about a defendant's intent are admissible at trial under the Federal Rules of Evidence. That is, of course, beside the point. The government does not explain why (or how) the Federal Rules of Evidence somehow have been imported into Local Rule 83.2.1.

---

[1] Ellen Barry, *A Scientist Is Arrested, and Academics Push Back*, NY Times, Jan. 26, 2021, https://www.nytimes.com/2021/01/26/us/mit-scientist-charges.html.

1

The question before this Court is simple: does questioning the loyalty of a citizen to the United States "concern[]" his character and reputation? *See* L.R. 83.2.1(c). Of course it does, and it poisons the public view of the defendant and hinders his ability to get a fair trial. The government does not seriously contend otherwise; rather, it tries to avoid being held accountable for its improper remarks by bizarrely citing the Federal Rules of Evidence.

B. The government misleads the Court about its Complaint and Press Release

Rather than defend its decision to mischaracterize a critical piece of "evidence" in its Complaint and Press Release or simply admit a mistake, the government offers increasingly dubious scenarios that might make its characterization of the email acceptable. *See* Response at 7-9. First, the government tries to downplay its use of the email. *Id.* at 8 ("as do the plethora of other allegations in the complaint…"). But the email is the only piece of evidence directly copied into the Complaint and the Press Release.

Second, the government acknowledges for the first time that the email *might be* "notes of a meeting" but contends it does not matter because, "neither the Press Release nor the Complaint **states** that the February 2016 email contained the Defendant's own, original thoughts." *See Id.* (emphasis added). This argument is belied by the text of the Complaint and Press Release itself. The government framed the email in the Complaint as follows:

> **Chen's efforts** to promote the PRC's scientific and economic development and advance its strategic goals were partially detailed in a February 2016 email the Chen sent himself using his MIT e-mail account. The following is a verbatim list of the items included in Chen's email.

Complaint at ¶ 19. The government framed the email in the Press Release as follows:

> It is further alleged that **Chen's efforts** to promote the PRC's scientific and economic development were partially detailed in a February 2016 email that Chen sent himself using his MIT e-mail account. The email read ....

2

The text of the Complaint and Press Release speaks for itself. **Of course the implication is that the email contained Prof. Chen's own thoughts.** The government's argument, therefore, that "neither the Press Release nor the Complaint **states** that the February 2016 email contained the Defendant's own, original thoughts" is obviously misleading. The government made this argument with the apparent expectation that the Court would not check the language of the actual Complaint or Press Release.[2]

Finally, the government posits a particularly strange theory: perhaps the email is simultaneously notes from a meeting **and** Professor Chen's own thoughts. Response at 3 ("The email sets out Chen's own thoughts, or his notes of a meeting with a high ranking PRC government official, **or both**..."). One would expect that the United States Attorneys' Office would have determined what the email meant before including it in a critical charging document filed with the Court (not to mention signed by a federal agent under oath) and in a press release widely distributed to future jurors and the general public. The Response portrays the government as a mere public observer of this case—musing as to the potential meaning of its own evidence— instead of a law enforcement agency with subpoena power who has been investigating this case for over a year.

---

[2] Although the government finally shares the entire first email with the Court, it simply pretends the second email— the one that shows Professor Chen was attending this event on behalf of MIT and working with the MIT administration—does not exist. Professor Chen has attached it at Appendix A.

C. <u>The government's defense for failing to include a critical exculpatory sentence from the Complaint—the only sentence the government excluded—raises broader concerns.</u>

The government tries to minimize the fact that it excluded from its public statements the most basic piece of exculpatory evidence.[3] The government contends it was correct to exclude the exculpatory sentence from the Complaint because:

> [I]n fact [it] adds nothing new to the Complaint. The additional line references a senior MIT administrator and the possibility of a collaboration with MIT. But the portion of the email quoted in the complaint already expressly includes references to a collaboration between MIT and the PRC. *Id.* ("How to promote MIT China collaboration . . . we should work together, we do share common grants for many things").

But the sentence the government excluded and the prior reference to collaborating with MIT are not the same. The government included a general reference to collaboration. Two pieces of context are critical here: 1) the government's theory is partially that Professor Chen misled MIT; and 2) at the time the government swore to this Complaint, it apparently, falsely, thought these were Professor Chen's own words. Thus, from the affiant's perspective, when he swore to this Complaint, he should have understood the excluded sentence to be Professor Chen saying he only wanted to effectuate these goals if his employer agreed. This directly rebuts the government's position that Professor Chen was working for the benefit of China without MIT's knowledge. Thus, the exclusion of the final sentence was deceitful and the contention that this sentence is immaterial flies in the face of the fact that it is clearly exculpatory.

D. <u>The contention that the false statements at the Press Conference and in the Press Release cannot violate Local Rule 83.2.1 because they rely on a false Complaint is untenable.</u>

On two separate occasions the government contends that even if the information it distributed was false, it did not violate Local Rule 83.2.1 because it was simply repeating the

---

[3] Specifically, the last (omitted) sentence states: "If MIT share same thoughts with me, we can plan seriously [named MIT senior administrator who was present at the talk], we can work together[.]"

allegations in the Complaint. *See* Response at 7 (regarding the $19 million that went to MIT, not Chen), 8 (regarding the false use of the email). The government appears to believe that the Local Rules permit it to make statements about Defendant's conduct whenever such statements appear in the charging document—regardless if the statements are false, and regardless of when the government finds out that the statements are false. Of course that is not the standard and it illustrates precisely why this Court should impose sanctions—because the government is attempting to put its wrongful behavior beyond review. The government provides no support for this argument in the case law, other than to claim the statements are no longer "extrajudicial." *Id.* Such a rule would have no limiting principle. The government could simply put false information that violates Local Rule 83.2.1 in a complaint, broadly disseminate it to the media, supersede and drop the false information, and claim its violations are beyond the reach of Local Rule 83.2.1. There is no point in even having Local Rule 83.2.1 if the government can in fact do that. Indeed, if the government is so eager to rely on the false allegations in the Complaint, the undersigned respectfully suggest that the Court exercise its supervisory authority and determine whether the Complaint itself was submitted with knowingly false statements, in violation of both the rules of professional conduct and the United States Code.[4]

## CONCLUSION

For the foregoing reasons, as well as those in the underlying Motion, this Court should impose sanctions on the government for its extra-judicial statements in violation of Local Rule 83.2.1.

---

[4] For instance, the Court might inquire: (1) did the affiant (and prosecutors) know $19 million went to MIT and not to Prof. Chen when he swore to (and they approved) the Complaint; (2) did the affiant (and prosecutors) know of the second email making clear Prof. Chen was attending an event on behalf of MIT when he swore to (and they approved) the Complaint; (3) did the affiant (and prosecutors) know that Prof. Chen was taking notes at a lecture and not writing his original thoughts when he swore to (and they approved) the Complaint.

Respectfully submitted,

GANG CHEN

By his attorneys,

/s/ Brian T. Kelly
Brian T. Kelly (BBO No. 549566)
Robert A. Fisher (BBO No. 652602)
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
617-345-1000
bkelly@nixonpeabody.com
rfisher@nixonpeabody.com

Dated: February 17, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing was filed electronically on February 17, 2021, and thereby delivered by electronic means to all registered participants as identified on the Notice of Electronic Filing.

/s/ Brian T. Kelly
Brian T. Kelly

**Appendix A**

| | |
|---|---|
| From: | Gang Chen |
| Sent: | Monday, February 29, 2016 3:17 AM UTC |
| To: | |
| CC: | |
| Subject: | Re: MOST |



Thanks for asking.  I think Mr. Wang was positively impressed with MIT.  I think MOST seems to be a major driver, especially giving he said now MOST is coordinating all the funding.  It can act in its own.  Regarding to funding, one possible pathway is MOST delegates their subsidiary companies to work with us (rather than a university).  In terms of scales, I feel it may not be too large.  However, once they set up examples, others will follow.

Will be happy to help in the process.

Best

Gang

Sent from my iPhone

On Feb 26, 2016, at 5:26 PM, MIT Administrator wrote:

> Hi Gang,
>
> Thanks for attending the session with VM Wang today.  I'm writing now to ask you for your thoughts about MOST as a partner for MIT in China.  It would seem from today's meeting that there is a possible path forward there, although probably not one with large funding.  But is MOST a ministry that could act with autonomy?  Would it have the ability to connect to innovative Chinese companies and to bring them into a relationship with MIT?  Is it a backwater or is it a major driver of Chinese policy for science and technology?  Your thoughts on these questions — and any other related thoughts — would be greatly appreciated.
>
> Best wishes,



