UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

GANG CHEN,

    Defendant.

No. 21-cr-10018-PBS

**ORDER ON DEFENDANT'S MOTION FOR SANCTIONS**

On January 14, 2021, law enforcement officers arrested the defendant, Gang Chen, a longtime MIT professor, on a federal complaint charging him with various felony offenses arising from his alleged failure to fully disclose to the government the extent of his relationship with China as it related to his academic work and research. At a press conference held later the same day, the then U.S. Attorney, Andrew Lelling[1], made a number of statements regarding the case which the defendant contends improperly commented on the merits of the case, were "false" and "highly inflammatory," and questioned his "character and reputation." The U.S. Attorney's Office also issued a press release which the defendant contends misleadingly placed benign written comments of the defendant in a pejorative context. The defendant alleges a violation of a Local Rule bearing on professional responsibility,

---

[1] The present motion for sanctions was filed on February 4, 2021. Mr. Lelling subsequently stepped down from his position (for unrelated reasons) on February 28, 2021.

Local Rule 83.2.1, and moves for sanctions against Mr. Lelling and the U.S. Attorney's Office. In particular he asks the court to (1) publicly reprimand Mr. Lelling for the comments made during the press conference, (2) require the Government to remove or appropriately revise the press release, and (3) require Mr. Lelling to follow Local Rule 83.2.1 going forward. (D. 23). The government in opposition argues that its oral and written statements were entirely proper and did not run afoul of any rules of professional conduct.

As in other high-profile cases where courts are called upon to assess the appropriateness of pre-trial public statements, the court must determine whether the former U.S. Attorney's conduct "strayed so close to the edge of the [governing] rules...that [the Defendant] has a non-frivolous argument that he fell over the edge to the Defendant's prejudice." *United States v. Silver*, 103 F. Supp. 3d 370, 373 (S.D.N.Y. 2015) (declining to dismiss indictment based on prosecutorial statements but issuing strong words of caution). I find here that while the government's statements in hindsight could have been more carefully chosen, particularly to the extent they plausibly could allow one to infer that the defendant was allegedly more loyal to China than to the United States--a notion the government denies it was seeking to advance--they nonetheless do not rise to a level warranting sanctions. The motion for sanctions therefore will be denied.

**I.      BACKGROUND**

On January 14, 2021, law enforcement officers arrested the defendant at his home in connection with a federal criminal complaint sought by the U.S. Attorney's Office in this District. The complaint charged the defendant with wire fraud, making false statements to the government, and failing to file a report of a foreign bank and financial account.  In essence, the complaint alleged that the defendant had failed to fully disclose the extent of his relationship with China on matters that overlapped with work and research the defendant was performing at MIT and for which he or MIT was receiving federal funding.  The U.S. Attorney's Office subsequently issued a press release and held a press conference the same day.

At the press conference, Mr. Lelling, among other things, stated in response to a question that "the allegations of the complaint imply that this was not just about greed, but about loyalty to China."  He also stated that "federal grant applications require the disclosure of information concerning sponsored foreign activities and awards."  Further, he stated that "[s]ince 2013, Chen has received about $19 million dollars in U.S. federal grants, but he has also received about $29 million dollars in foreign funding, including substantial money from a public research university in China that is funded by the Chinese government." (D. 23 at 3, 4).

Regarding the press release, it was entitled "MIT Professor Arrested and Charged with Grant Fraud," and it stated among other things that the defendant was engaged in "efforts to promote [China's] scientific and economic development." The release indicated that this assertion was based on a February 2016 email the defendant had written and sent to himself, and it set out a portion of the email containing six enumerated bullet-point notations:

1. promote chinese collaboration
2. China places innovation (scientific) as key and core not fashion [sic], but because we must do it, from historic trend as well from our stage
3. our economy is no. 2, but from technology (structure of economy) and human resources, we are far from no. 2
4. we are paying big price in environment, not sustainable, as well as from labor cost
5. environment protection and development in same place, environment even higher, clean energy if higher cost, reduce steel, cement.  We must count on technology, cannot grow as past
6. communist 18th convention, scientific innovation placed at core.  We realize not just independent innovation; but also internationalize to plan for and facilitate.  Closed

>  door innovation does not work; innovation as driving
> 
>  force.[2]

According to the defendant, a line at the bottom of this email, which was not included, as well as a subsequent email the defendant wrote several hours later, which also was not included, would have made it clear that the notations were merely notes from a lecture the defendant had attended. (Id. at 5).

## II. DISCUSSION

As a threshold matter, the court presumes that the defendant's motion has not been mooted by Mr. Lelling's subsequent (and, again, unrelated) departure from the U.S. Attorney's Office. No Local Rule suggests differently and there is precedent supporting the notion that a court may still consider the appropriateness of an attorney's conduct even if they have left the position they held when the actions at issue took place. *See, e.g., United States v. Kelly,* 543 F. Supp. 1303, 1314 (D. Mass. 1982). In any event, the defendant's motion also seeks an order admonishing the government and the court of course retains the power to sanction the government as a party, notwithstanding the status of any individual acting on its authority. *United States v. Horn*, 29 F.3d 754, 767 (1st

---

[2] The actual email shows that there were in fact a total of ten enumerated comments.

Cir. 1994) (court has ample means at its disposal to "catch the Justice Department's attention, punish the culprit, and deter future prosecutorial excesses" including ethics seminar referrals, internal discipline referrals, and publicly reprimanding Department of Justice itself).

<u>Local Rule 83.2.1</u>

Turning then to the merits, the defendant alleges that the government has violated Local Rule 83.2.1. The rule was enacted in response to the Supreme Court's direction, in *Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966), that courts "take such steps by rule and regulation that will protect their processes from prejudicial outside interferences." *United States v. Flemmi*, 233 F. Supp. 2d 75, 79 (D. Mass. 2000) (discussing predecessor Local Rule 83.2A). It provides in relevant part that no lawyer shall:

> release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which the lawyer is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

L.R. 83.2.1(a).

It further specifies that:

> From the time of arrest, issuance of an arrest warrant, or the filing of a complaint, information, or indictment in any criminal matter until the commencement of trial or disposition without trial, a lawyer associated with the prosecution or defense shall not release or

> authorize the release of any extrajudicial statement, which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning... the character or reputation of the accused...

L.R. 83.2.1(c)(1).

Notably, the rule does permit lawyers to make certain disclosures, including statements and documents that are already in the public record. L.R. 83.2.1(d), entitled "Permitted Disclosures," provides that:

> The foregoing shall not be construed to preclude the lawyer during this period, in the proper discharge of the lawyer's official or professional obligations, from announcing the facts and circumstances of arrest (including time and place of arrest, resistance, pursuit, and use of weapons), the identity of the investigating and arresting officer or agency, and the length of the investigation; from making an announcement, at the time of seizure of any physical evidence other than a confession, admission or statement, which is limited to a description of the evidence seized; from disclosing the nature, substance, or text of the charge, including a brief description of the offense charged; from quoting or referring without comment to public records of the court in the case; from announcing the scheduling or result of any stage in the judicial process; from requesting assistance in obtaining evidence; or from announcing without further comment that the accused denies the charges.

<u>The Press Conference</u>

With respect to the press conference, the defendant's most serious claim is that Mr. Lelling improperly impugned the defendant's "character and reputation" by implying that he was disloyal to the United States. This assertion arises from Mr. Lelling's statement during the conference that "the

7

allegations of the complaint imply that this was not just about greed, but about loyalty to China."  The defendant argues that this statement was improper because loyalty to one country implies disloyalty to others; if he were loyal to China, it necessarily meant that he must be disloyal to the United States.  The government argues that the statement was wholly proper because it merely commented on the defendant's motive and intent in committing the alleged offenses, it did not question his character and reputation, and it did not imply any disloyalty to the United States.

In the court's view, Mr. Lelling's statement should have been accompanied by more wording to place it in the benign context the government urges here, and to clarify that the government in no way was suggesting that the defendant was not loyal to the United States.  Even crediting the government's explanation that the statement was not meant to imply any sense of disloyalty on the defendant's part to the United States, and recognizing that individuals can without issue enjoy strong feelings of loyalty to two countries simultaneously, it is not hard to imagine how some might nonetheless conflate a statement regarding the defendant's loyalty to China with implying a disloyalty to the United States, particularly in light of some media portrayals of the Chinese government.  Where there was and is no allegation that the defendant engaged in espionage or any

8

anti-American activities, any public press statement deigning to comment on the defendant's motive or intent in committing the crimes charged ideally should have made that point clear.  To the extent the statement here did not do so and may have led to any unflattering speculation as to the defendant's mindset, the statement was inappropriate.

That being said, the court does not find the statement to amount to a violation of Local Rule 83.2.1.  First, the statement was apparently not offered as part of Mr. Lelling's prepared premeditated statements but instead was offered in response to a reporter's question, suggesting that it was made without much deliberation or an intent to subtly convey within it some opinion regarding the defendant's feelings towards the United States.  Further, the comment was brief, not expounded upon and did not appear to give rise to further questions regarding the defendant's mindset, suggesting that the pejorative inference the defendant complains of did not appear to resonate with the conference attendees.  Indeed, the defendant does not contend that subsequent press articles reported the government as alleging disloyalty on the defendant's part.

These considerations militate against finding a violation here because the impetus of Local Rule 83.2.1 is to protect defendants against actual prejudice in the conduct of their

9

trial.  The U.S. Attorney's reference to the defendant's loyalty to China was not well advised but it was a short and relatively tame answer to a reporter's question and on balance did not unfairly call into question the defendant's character or reputation.  Comments bearing on an accused's motives should be formulated to avoid a risk of misinterpretation but the risk here was not substantial and sanctions therefore are not warranted.  *See e.g., United States v. Babich*, No. 16-cr-10343-ADB, D. 615 (D. Mass. Dec. 17, 2018) (gag order, but no direct sanction for Government's statement that defendants were "no better than street level drug dealers" who "allegedly fueled the opioid epidemic)."

The defendant also contends that two other statements made by Mr. Lelling during the press conference were improper because they go to the merits of the case.  In the first instance, Mr. Lelling stated that, "to be clear, federal grant applications require the disclosure of information concerning sponsored foreign activities and awards."  In the second, Mr. Lelling stated that "[s]ince 2013, Chen has received about $19 million dollars in U.S. federal grants, but he has also received about $29 million dollars in foreign funding, including substantial money from a public research university in China that is funded by the Chinese government."  Both statements were also contained in the government's complaint.

10

The government did not violate any rules in making these statements.  On the contrary, the government is permitted to disclose the "nature, substance, or text of the charge, including a brief description of the offense charged," and may "quote" or "refer" "without comment to public records of the court in the case."  L.R. 83.2.1(d).  In choosing to repeat verbatim passages from the complaint itself, Mr. Lelling did no more than what he is permitted to do under the Rule itself. Moreover, the defendant contends that the statements improperly go to the merits of the case but fails to articulate how that is so, pivoting instead to explain why the allegations are not accurate.  It suffices to note that even assuming the complaint's allegations could be determined after trial to be inaccurate, that does not render their repetition at the press conference improper.

<u>The Press Release</u>

With respect to the press release, the defendant argues that the government, in reprinting a portion of an email written by the defendant to himself after attending a lecture, purposefully omitted context which the defendant characterizes as being exculpatory, and as such violated L.R. 83.2.1 as well as Massachusetts Rule of Professional Conduct 4.1.  Rule 4.1 provides that an attorney "shall not knowingly make a false statement of material fact or law to a third

11

person," and Comment 1 to the rule instructs that "partially true but misleading statements or omissions" can be equivalent to "affirmative false statements."

According to the defendant, the government violated these rules in two ways. First, the government failed to include the last sentence of the email, which read "If MIT share the same thoughts with me, we can plan seriously," followed by a line that read "[redacted name of MIT senior administrator who was present at the talk]. We can work together." The defendant contends that this omitted portion makes it clear that the enumerated notations were notes from a lecture the defendant had attended rather than personal statements reflecting support for China. In this regard, the defendant contends that a second email of the defendant's drafted five hours later, showed without a doubt that (1) on the day the excerpt was written the defendant attended a lecture in Boston by a Chinese government official, (2) a senior MIT administrator responsible for liaising with foreign government officials also attended the lecture, and (3) this administrator thanked the defendant for attending and conferred with him regarding future opportunities to partner with the speaker's organization. To the defendant, these two pieces of information, which the government had in its possession prior to issuing the press release, refuted

12

the government's characterization of the email. The defendant contends that the government misleadingly issued the press release as framed to "garner unfair and prejudicial publicity" against the defendant, and consequently interfered with his right to a fair trial or otherwise prejudiced the administration of justice.

The government argues in opposition that this argument fails because it never claimed that the excerpted portion of the email reflected the defendant's personal thoughts. Rather, regardless of whether the email reflected the defendant's own thoughts or were notes from a lecture, it tended to demonstrate that the defendant had an interest in promoting China's scientific and economic development, which went to his motive for committing the charged offenses.

As between the two, the government has the better argument here. Even assuming the excerpted portion of the email reflected nothing more than notes from a lecture the defendant attended, it was included in the publicly filed complaint and thus could be disclosed, the government noted for what it was worth that the defendant wrote and sent the notes to himself, and the email did at some level reflect the defendant's interest in Chinese scientific and economic development. Perhaps the government sought to wring more value out of the email than it should have, but there is no

13

basis to find that the press release interfered with the defendant's right to a fair trial or otherwise prejudiced the administration of justice.

### III. **CONCLUSION**

For the forgoing reasons, the Defendant Gang Chen's Motion for Sanctions for U.S. Attorney Lelling's Repeated Violations of Local Rule 83.2.1 (D. 23) is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: July 6, 2021