UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | |
| GANG CHEN, | ) | Case No. 21-cr-10018 |
| Defendant. | ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS CONCERNING COUNT FOUR

The United States of America hereby opposes defendant Gang Chen's Motion for a Bill of Particulars (the "Motion"). The defendant's Motion is not only untimely, but also improperly seeks disclosure of the government's legal theories – an impermissible reason for seeking a bill of particulars – and ignores the fact that the Indictment more than adequately enlightens the defendant as to the charges against him.

The Indictment is clear. It alleges that the defendant made false statements and material omissions when he applied for funding through MIT from the U.S. Department of Energy ("DOE") in response to a specific DOE funding opportunity and caused a progress report containing false statements and material omissions to be filed with DOE two years later. The Indictment further alleges that those false statements and material omissions specifically concerned the defendant's numerous "appointments, contracts, and activities" with the government of the People's Republic of China ("PRC"), as well as "the involvement of international collaborators" in the defendant's research. The Indictment also details no less than eight examples of Chen's undisclosed PRC-based appointments, contracts, and activities –

including the defendant's involvement in several talent plans and service as an overseas expert for the PRC government.

Despite the Indictment's clarity, the defendant nonetheless filed the Motion. The reasons cited by defendant for his Motion, however, are improper. He seeks details regarding the government's legal theories – specifically, asking the government to explain why each of the defendant's appointments, contracts, and activities with the PRC government (whether listed in the Indictment or not) were required to be disclosed to DOE. But the defense's desire to discover the government's evidence and its legal theories cannot form the basis for seeking a bill of particulars. Absent a valid reason for the defendant's request, his Motion must be denied.

## BACKGROUND

On January 19, 2021, Chen was indicted on two counts of wire fraud, one count of failing to file a report of a foreign bank account, and one count of making a false statement on his tax returns. *See* Indictment (Jan. 19, 2021), Dkt. No. 12. He was arraigned three days later, on January 22, 2021. *See* Dkt. No. 19. As the Indictment makes abundantly clear, the two wire fraud charges[1] are based on Chen's failure to disclose his numerous PRC governmental contractual appointments, affiliations, and sources of support when applying for DOE funding that, had they been disclosed would have been material to DOE's funding decision. In fact, the Indictment details many of the PRC governmental positions Chen held and services he performed pursuant to contracts he entered with the PRC government and/or PRC governmental entities that he concealed from DOE,[2] cites to specific sections of DOE's funding announcement regarding

---

[1] The defendant's Motion for a Bill of Particulars does not concern the two tax-related charges.

[2] These positions, contracts, and sources of support were also detailed in the Complaint Affidavit at ¶¶ 20-22.

disclosure requirements, and describes how Chen's false statements and omissions were material to DOE.

First, the Indictment states that in 2016, DOE issued a funding announcement (the "Announcement") for research funding involving "Advanced Scientific Computing Research, Basic Energy Sciences, Biological and Environmental Research, Fusion Energy Sciences, High Energy Physics, and Nuclear Physics." The Announcement required applicants to submit a Projective Narrative that included two detailed Appendices. The Indictment describes these Appendices thusly:

> In Appendix 1, applicants were required to submit a "biographical sketch" for the project director and/or principal investigator ("PI") consisting of, among other things, the PI's education and training; the PI's research and professional experience, including a brief description of all "professional/academic positions;" a list of up to "10 publications most closely related to the proposed project;" and, for the purpose of determining potential conflicts of interest, a list of "all persons" who have been collaborators or co-authors, graduate students, and post-doctoral associates working with the PI "on a research project, book, or book article, report, abstract, or paper during the 48 months preceding the submission of this application." In Appendix 2 to the project narrative, applicants were required to list "all current and pending support" for the PI and "all senior/key persons … for ongoing projects and pending applications," as well as "all sponsored activities or awards requiring a measurable commitment of effort, whether paid or unpaid." The grant application also required the PI to disclose whether the proposed project would involve "activities outside the United States or partnerships with international collaborators."

Indictment, ¶ 5.  The Appendices contained in the Announcement have been produced to Chen in discovery and are available for him to review in full.

Second, the Indictment describes numerous false statements and material omissions regarding Chen's contracts, awards, and affiliations with the PRC government that Chen made when applying for funding in response to the Announcement. As the Indictment states:

Among other things, CHEN failed to disclose to DOE (1) that he was a "4th Overseas Expert Consultant" to the PRC government; (2) that he served on the Advisory Board of Southern University of Science and Technology ("SUSTech"), a government-funded research university in the PRC; (3) that he was a "review expert" for the National Natural Science Foundation of China; (4) that he was a "overseas strategic scientist" for the Zhongguancun Development Group, a PRC state-owned enterprise funded by the Beijing Municipal Government, devoted to the PRC's scientific and technological development; and (5) that he was an advisor to the Chinese Scholarship Council, a non-profit institution run by the PRC government's Ministry of Education." CHEN's Proposal also failed to disclose activities likely to occur outside the United States and partnerships with various international collaborators, including, but not limited to, Tongji University, Huazhong University of Science and Technology, the Chinese Scholarship Council, and the National Natural Science Foundation of China.

Indictment, ¶ 6. The Indictment also states that "[h]ad CHEN reported his various PRC appointments, contracts and activities and the involvement of international collaborators, DOE would have inquired further regarding his PRC appointments, contracts and activities, and may have denied his grant application altogether." Indictment, ¶ 7.

Third, the Indictment states that Chen submitted a Progress Report to DOE in 2019, which again included false statements and material omissions relating to Chen's connections with the PRC government. Once more, the Indictment provides significant detail regarding the activities and awards that Chen failed to disclose:

Specifically, CHEN failed to disclose (1) that he was a "4th Overseas Expert Consultant" to the PRC government; (2) that he was an advisor to SUSTech (3) that he was a "review expert" for the National Natural Science Foundation of China; (4) that he was a "overseas strategic scientist" for the Zhongguancun Development Group; and (5) that he was an advisor to the Chinese Scholarship Council. CHEN also failed to disclose other PRC appointments and activities that arose *after* he submitted the March 2017 Proposal, including (1) CHEN's participation in the PRC's "Top Talent Wuhan City Partner" and "3551 Optics Valley" Talent Plans; and (2) CHEN's appointment as a consultant and advisor to the "Outstanding Talent Plan" to the "Chongqing No. 2 Foreign

4

Language School," a state-owned institution in the PRC, for which
he would [be] paid at least approximately $355,715 for his services.

Indictment, ¶ 8.  The Indictment also states that "[h]ad CHEN reported his appointments,

contracts and activities involving the PRC and its government, DOE would have inquired further

regarding his PRC affiliations, contracts and activities, and may have declined to continue

funding the grant." Indictment, ¶ 9.

Since Chen was indicted, the government has provided the defendant with a significant

amount of discovery, as the defendant concedes. *See* Memo. In Support of Mtn. for Bill of

Particulars (July 15, 2021), Dkt. No. 60 ("Memo"), p. 5 ("The government has produced about a

terabyte of data in discovery").  Despite the volume of discovery, the materials produced by the

government have been well organized and are easily accessible to the defendant.  For example,

all grant-related documents (including the Announcement and the other relevant DOE materials)

were produced in a discrete folder titled "Grant Documents."  Documents obtained from the

defendant's employer and other third-party records were produced in a similar, well-organized

fashion.

On July 15, 2021, nearly six months after he was arraigned, Chen filed the instant

Motion.

<u>**ARGUMENT**</u>

I.    <u>Applicable Law</u>

Rule 7 of the Federal Rules of Criminal Procedure provides that a "defendant may move

for a bill of particulars before or within 14 days after arraignment or at a later time if the court

permits." Fed. R. Crim. 7(f).  Accordingly, federal courts in this district and throughout the

country have denied motions for bills of particulars where the motion was filed beyond the 14-

day deadline and leave of court was not requested.  *See e.g., United States v. Mehanna*, 2011 WL

796400, *2 (D. Mass. Mar. 1, 2011) (O'Toole, D.J.) (denying motion for bill of particulars filed "long after the defendant's arraignment," which raised the Court's "suspicion that he is not so much confused about what he is charged with"); *United States v. Damante*, 2011 WL 4007623, at *1 (D. Nev. Sept. 8, 2011) ("Defendant cannot wait [four months] and then, when the case approaches trial, feign uncertainty as to the charges against him.  Not only did the deadline to move for a bill of particulars expire, but the Defendant also failed to obtain this Court's permission to request a bill of particulars pursuant to Rule 7(f)."); *United States v. Ayala-Vazquez*, 2010 WL 3981831, at *2 (D. Puerto Rico Oct. 8, 2010) (denying motion five months after arraignment where "not only did the deadline to move for a bill of particulars expire, but the Defendant also failed to obtain this Court's permission to do so outside of the established time limit"); *United States v. Hazelrigg*, 2009 WL 3617562, at *2 (D.S.D. Oct. 29, 2009) (denying defendant's request three months after arraignment); *United States v. McKay*, 70 F. Supp. 2d 208, 211 (E.D.N.Y. 1999) (finding motion filed three months after arraignment untimely where no good cause shown for delay).

If timely filed, a motion for a bill of particulars is not a discovery device, and it does not empower defendants to interrogate the government regarding its evidence, witnesses, or the government's legal theories. *United States v. Stryker Biotech, LLC*, 2010 WL 2900684, *2 (D. Mass. Jul. 21, 2010) (Dein, M.J.) ("A bill of particulars is not a tool of discovery, and its purpose is not to obtain disclosure of evidence, witnesses to be offered at trial, or the government's legal theories."); *United States v. Allen*, 2009 WL 2496472, at *1 (D. Mass. 2009) (Bowler, M.J.) ("A defendant is not entitled to recover evidentiary matters by filing a motion for a bill of particulars."); *United States v. Perez*, 940 F. Supp. 540, 550 (S.D.N.Y. 1996) ("A bill of particulars is not an investigative tool which a defendant can use to force the government to

preview its evidence or expose a legal theory."). Accordingly, "[m]otions for bills of particular are seldom employed in modern federal practice." *United States v. Sepulveda*, 15 F.3d 1161, 1192 (1st Cir. 1993). "When pursued, they need be granted only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause." *Id*. at 1192-93.

An indictment is sufficiently particular if it "elucidates the elements of the crime, enlightens a defendant as to the nature of the charge against which she must defend, and enables her to plead double jeopardy in bar of future prosecution of the same offense." *Id*. at 1192 (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also* Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government."). A bill of particulars need only be granted where the indictment is so vague that it does not comply with these purposes. *See Sepulveda*, 15 F.3d at 1192. Importantly, an indictment need not be "infinitely specific," nor identify all evidence the Government will present at trial. *Id*.

The relevant inquiry when considering a motion for a bill of particulars is not whether the information sought would be *helpful* to the defense, but rather whether it is *necessary* to allow a defendant to prepare his defense and avoid surprise at trial. *United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988). Where the information necessary for the preparation of the defense can be obtained through other means, such as discovery, a bill of particulars is unwarranted. *See, e.g., Sepulveda*, 15 F.3d at 1193 (bill of particulars unwarranted where defendants "enjoyed the benefits of modified open-file discovery, *i.e.*, automatic discovery that encompassed all relevant data"); *United States v. Godfrey*, 2013 WL 1414887, at

*3 (D. Mass. Apr. 5, 2013) (Bowler, M.J.) (denying bill of particulars where indictment was specific enough and discovery had been provided in a searchable format); *United States v. Kemp*, 2004 WL 2757867, at *8 (E.D. Pa. 2004) ("Courts are especially reluctant to direct the filing of a bill of particulars when the government has provided the defendant with extensive pre-trial discovery.").

II.     The Motion for a Bill of Particulars is Untimely

The defendant filed his Motion for a Bill of Particulars on July 15, 2021, nearly six months after his arraignment on January 22, 2021, and long past the 14-day deadline prescribed by the Federal Rules of Criminal Procedure. Fed. R. Crim. 7(f). The defendant never requested, nor did this Court ever grant, permission to file the motion beyond the 14-day deadline imposed by Rule 7(f).  In fact, the defendant did not even address, much less justify, the lateness of his motion or the fact that he failed to seek leave of this Court to file it.

Although he does not address the untimeliness of his motion directly, the substance of the defendant's Motion suggests that he waited to file his Motion until the government was finished providing discovery, and is using the Motion as a basis for seeking out the government's legal theories regarding that evidence.  *See* Memo, p. 5 ("Professor Chen's counsel has spent hundreds of hours poring through documents that the Government has provided in discovery, and is still unable to discern what the Government's vague references to 'other matters' or 'other things' mean, what allegedly false statements were made in the Proposal or Progress Report, and *why the Government believes* there was a duty to inform for each of the alleged omissions.") (emphasis added). This explanation succinctly captures the mistaken premise on which the defendant's motion rests: "[a] bill of particulars is not a tool of discovery, and its purpose is not to obtain disclosure of evidence, witnesses to be offered at trial, or the government's legal

theories." *Stryker Biotech*, 2010 WL 2900684, at *3. In fact, in this district, bills of particulars are required to be filed before the government is obligated to turn over *any* discovery to a defendant whatsoever.  *Compare* Fed. R. Crim. 7(f) (requiring motions for bills of particulars to be filed within 14 days of arraignment) *with* L.R. 116.1(c) (requiring the government to produce discovery within 28 days of arraignment).  Accordingly, because the defendant's Motion was filed nearly six months after the deadline imposed by Rule 7(f), and the defendant never requested leave from this Court to file it, the Motion should be denied as untimely.

III.    <u>The Government is Not Required to Disclose Its Legal Theories as to What Language Created a Duty for Each Omission and False Statement.</u>

In his Motion, the defendant asks this court to compel the government to reveal its legal theories regarding the specific language in the Announcement — itself a discrete document that is readily available to the defense — that created Chen's duty to disclose his numerous contracts, awards, and affiliations with the PRC government. *See* Memo, p. 2 ("[c]ritically, the Government fails to articulate what language in the Application *it believes* created a duty to disclose each of the seven omissions.") (emphasis added). Such a request is nothing more than an improper attempt to obtain the government's legal theories. *See Stryker Biotech, LLC*, 2010 WL 2900684, at *3; *United States v. Perez*, 940 F. Supp. 540, 550 (S.D.N.Y. 1996). On that basis alone, the Motion should be denied.

In fact, however, the Indictment *does* detail the primary origins from which Chen's disclosure obligations arose. As detailed above, *supra* at 3, the Indictment describes two appendices issued with the Announcement. Those appendices required Chen to make numerous disclosures. They have been produced to the defendant in discovery.[3] And the Indictment is clear

---

[3] The defendant is clearly aware of the disclosure requirements contained in the Announcement because it was produced in him in automatic discovery nearly six months ago. See Motion, Ex.

that Chen's false statements and material omissions – made when applying for DOE funding in response to the Announcement, and in a progress report on the same project – form the basis of the two wire fraud charges.

The government is also not required to provide its legal theories regarding whether Chen's failure to disclose specific PRC-government affiliations violated the language of Appendix 1, or Appendix 2, or both Appendix 1 and Appendix 2. *See* Memo, p. 9. The defendant first argues that whether a false statement or material omission occurs with respect to Appendix 1 or Appendix 2 may require different defenses. While this may be technically true, it surely does not provide a basis for a bill of particulars. *See Stryker Biotech*, 2010 WL 2900684 at *4 ("[a] defendant will not be prejudiced if 'normal investigation [will] disclose[] the further information they require[]'"); *see also Matos-Peralta*, 691 F. Supp. At 791 (the relevant inquiry is not whether the information sought would be helpful to the defense, but rather whether it is necessary to allow a defendant to prepare his defense and avoid surprise at trial). In other words, regardless of whether one or both appendices gave rise to the defendant's disclosure obligations, it simply cannot be said that he "will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause" in the absence of "a more detailed specification." *Sepulveda*, 15 F.3d at 1192-93. The defendant is trying to add complexity to obscure a simple fact: that the defendant bore disclosure obligations that he intentionally did not satisfy.

The defendant also cites a non-controlling and inapposite case, *United States v. Tam*, 2017 WL 3782752 (N.D. Cal. Aug. 31, 2017), in support of his argument. In *Tam*, the defendant

---

A., pp. 56-57. This is more than sufficient and obviates the need for a bill of particulars. *See Stryker Biotech*, 2010 WL 2900684, at *4 (because it had identified key exhibits, the government was under no obligation to issue a bill of particulars).

sold computer equipment with altered serial numbers to a co-conspirator, who then resold the equipment to third parties. Motion, Ex. D. The issues in *Tam* were whether the defendant had any duty to disclose information about the serial numbers to the third parties, what the defendant was required to disclose to those third parties, and whether that was adequately alleged in the indictment. No such issue arises here.  To be sure, it is clearly alleged in the Indictment (1) that Chen had an obligation to disclose his appointments, contracts and activities with the PRC government to DOE (eight such contracts, appointments and activities are listed in the Indictment); (2) that the disclosures were required as part of Chen's application for funding in response to DOE's Announcement, as well as in his progress report; and (3) that Chen's failure to make those disclosures was material to DOE. *See generally* Indictment. Nothing more is required.

### IV.    The Government Has Adequately Described Chen's Material Omissions and False Statements

The Indictment also more than adequately describes Chen's material omissions and false statements, although it need not describe every single material omission or false statement related to Chen's PRC governmental contractual relationships, positions/appointments, and sources of support . *See Sepulveda*, 15 F.3d at 1192 (indictment need not be "infinitely specific," nor identify all evidence the government will present at trial). The defendant complains that the Indictment lists *only* the following PRC appointments, contracts and activities as items that the defendant failed to disclose:

1)  Chen was a "4th Overseas Expert Consultant" to the PRC government;

2)  Chen served on the Advisory Board of Southern University of Science and Technology ("SUSTech"), a government-funded research university in the PRC;

3) Chen was a "review expert" for the National Natural Science Foundation of China;

4) Chen was an "overseas strategic scientist" for the Zhongguancun Development Group, a PRC state-owned enterprise funded by the Beijing Municipal Government, devoted to the PRC's scientific and technological development;

5) Chen was an advisor to the Chinese Scholarship Council, a non-profit institution run by the PRC government's Ministry of Education;

6) Chen participated in the PRC's Top Talent Wuhan City Partner Talent Plan;

7) Chen participated in the PRC's 3551 Optics Valley Talent Plan; and

8) Chen was a consultant and advisor to the Outstanding Talent Plan at the Chongqing No. 2 Foreign Language School, a state-owned institution in the PRC, which called for payments to Chen of at least $355,715.

Indictment, ¶¶ 6-8.  Moreover, in addition to these eight specific items, the Indictment also makes clear that Chen's materially false statements and omissions concerned "his PRC appointments, contracts, and activities" generally, as well as "the involvement of international collaborators" in his DOE-funded research. Indictment, ¶ 7; *see also* Indictment, ¶ 9 (referencing that the items which were material to DOE were Chen's "appointments, contracts, and activities involving the PRC and its government").

As a result, the Indictment is clear regarding what Chen failed to disclose:[4] Chen made false statements and omissions regarding his PRC appointments, contracts, and activities, and the involvement of international collaborators. These false statements and omissions occurred not only in Chen's application for DOE funding in response to the Announcement, but also when Chen submitted his progress report to DOE in 2019. Thus, the Indictment has abundantly "enlighten[ed the] defendant as to the nature of the charge against which []he must defend, and enable[d] h[im] to plead double jeopardy in bar of future prosecution of the same offense," *Sepulveda*, 15 F.3d at 1192 (citing *Hamling*, 418 U.S. at 117). As such, no bill of particulars is required.

The simple fact of the matter is that the defendant wants the government, through a bill of particulars, to identify its legal theories, as well as the specific documents and evidence it intends to use to prove its case. This type of discovery concerning the government's case-in-chief and its legal theories is, of course, unfounded.  "A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation.  Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985) (emphasis in original).  Coupled with the detailed discovery produced in this case, the Indictment itself gives the defendant and his robust legal team the information they needs to prepare for trial and to conduct their *own investigation* into those charges should they decide to do so. *Allen*, 2009 WL 2496472, at *2 (denying motion for a bill of particulars where "[d]efendants fail[ed] to

---

[4] As noted above, the Complaint affidavit also describes these appointments, contracts, and services in more detail.  *See* Complaint at ¶¶ 20-23.  It also describes the evidence supporting international collaboration.  *See id.* at ¶¶ 35-37.

adequately demonstrate that their own investigation based on the evidence available to them would not be sufficient to prepare an adequate defense").

## <u>CONCLUSION</u>

For all of these reasons, the government respectfully asks the Court to deny the defendant's motion for a bill of particulars.


Respectfully submitted,

NATHANIEL MENDELL
ACTING UNITED STATES ATTORNEY


By:      /s/ Timothy H. Kistner
         TIMOTHY H. KISTNER
         B. STEPHANIE SIEGMANN
         JASON A. CASEY
         Assistant U.S. Attorneys

         David C. Aaron
         Trial Attorney
         U.S. Department of Justice
         National Security Division
         Counterintelligence & Export Control Section


Dated:  August 5, 2021

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to counsel for the defendant, who are registered participants identified on the Notice of Electronic Filing (NEF).

By:     <u>/s/ *Timothy H. Kistner*</u>
        TIMOTHY H. KISTNER
        Assistant United States Attorney